UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SCHOLAR INTELLIGENT SOLUTIONS, INC., | : | |
| Plaintiff, | : | Civil Action No. 13-642 (SRC) |
| v. | : | OPINION |
| THE NEW JERSEY EYE CENTER, P.A. et al. | : | |
| Defendants. | : | |

**CHESLER**, **U.S.D.J.**

This matter comes before the Court on two motions made by Defendants The New Jersey Eye Center, P.A. (a/k/a The Vision Center of New Jersey, a/k/a Dello Russo Vision), Stephanie Dello Russo, Laser Eye Practice of Brooklyn, PLLC, Laser Eye Practice of Long Island, PLLC, and Laser Eye Practice of New York, PLLC (collectively "Defendants"). First, Defendants have moved for judgment on the pleadings or, in the alternative, for partial summary judgment. (Docket Entry 11) All the original defendants except for Stephanie Dello Russo have counterclaimed against Plaintiff Scholar Intelligent Solutions, Inc. ("SIS"), and joined in a Third-Party Complaint against Karl Stearns, William Scholar, and Mitchell Scholar (collectively the "Third-Party Defendants"). (Docket Entry 10) Defendants[1] now move for a preliminary injunction. (Docket Entry 17) SIS has opposed the motion for judgment on the

---

[1] In the interest of simplicity, the Court will refer only to "Defendants" and avoid using the terms "Counterclaimants" and/or "Third-Party Plaintiffs." The Court recognizes that, strictly speaking, Stephanie Dello Russo has neither counterclaimed nor joined the Third-Party Complaint.

pleadings/motion for summary judgment (Docket Entry 23), and SIS and the Third-Party Defendants have opposed the motion for a preliminary injunction (Docket Entry 24).  The Court has considered the parties' submissions and opts to rule on the motions without oral argument.  See Fed. R. Civ. P. 78.  For the reasons that follow, the Court will grant the Defendants' motion for judgment on the pleadings in part and deny it in part, and deny the motion for summary judgment.  The Court will also deny Defendants' motion for a preliminary injunction.

As background,[2] this case arises out of a commercial dispute between a group of laser eye surgery centers and a vendor who had agreed, among other things, to provide advertising, production, media buying, and call center support to the centers.  Broadly speaking, the Plaintiff complains that it was fraudulently induced into providing its services at a 50% discount; that it is still owed money on services rendered; and that Defendants unlawfully terminated the contract without cause.  Defendants have generally denied Plaintiff's allegations and dispute that a contract for services existed between the parties at all.  The corporate defendants have counterclaimed against SIS and also filed a Third-Party Complaint against its owners, William and Mitchell Scholar, and SIS employee Karl Stearns.  The Counterclaim/Third-Party Complaint contains a number of counts,[3] but the general thrust is that after the parties' business relationship began to sour, SIS, Stearns, and William and Mitchell Scholar engaged in a pattern of hostile and

---

[2] Because it writes principally for the parties involved, the Court will only discuss the most basic facts of the case.

[3] Defendants' Counterclaim/Third-Party Complaint contains counts for breach of contract, breach of fiduciary duty, conversion, replevin, misappropriation of confidential information, tortious interference with prospective business relations, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and violation of the Computer-Related Offense Act, N.J.S.A. § 2A:38A-3.  With the exception of the claim for breach of contract, which is pled only against SIS, all claims are asserted against SIS, Karl Stearns, and William and Mitchell Scholar.

threatening behavior, including sabotaging Defendants' website, promoting the filing frivolous and untrue complaints with federal authorities, and threatening to disclose Defendants' confidential patient leads to Defendants' competitors.  Defendants now seek an order restraining SIS and the Third-Party Defendants from disseminating the Defendants' confidential information.

The Court will first consider the Defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12©.  Rule 12© permits a party to move for judgment on the pleadings "after the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12©.  Federal Rule of Civil Procedure 12(h)(2) provides that a Rule 12© motion authorizes a party to raise grounds upon which a pleading fails to state a claim upon which relief may be granted.  The Third Circuit has held that a motion brought under Rule 12© is governed by the same standard of review applicable to Rule 12(b)(6) motions.  Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991).  Thus, to survive a motion for judgment on the pleadings, a complaint must set forth "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard will be met if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

Defendants argue that the three contract claims must be dismissed because Plaintiff failed to attach the alleged contract to the Complaint.  The Court does not agree that the Plaintiff's claims rely only on threadbare recitals of the elements of a breach of contract claim – Plaintiff alleges a number of specific facts to support the claim.  And while it may be good practice for a

3

plaintiff to attach to the Complaint a copy of the contract sued upon, the Federal Rules do not require it.[4]  Accordingly, the Court will deny the Defendants' motion to dismiss Count I ("Breach of Contract for Services Rendered"), Count II ("Breach of Contract for Recovery of 7.5% Commissions"), and Count III ("Breach of Contract for Lost Profits") of the Complaint.

Defendants' argument for summary judgment on the breach of contract claims is also unavailing.  The standard upon which a court must evaluate a summary judgment motion is well-established.  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  Here, Defendants have moved for summary judgment before discovery has even begun.  As such, the motion is premature.  See, e.g., Haynos v. Siemens Water Techs. Corp., No. 12-173, 2012 U.S. Dist. LEXIS 163751, at *6 (W.D. Pa. Nov. 16, 2012) (summary judgment motion filed before discovery deemed premature).

The Court next considers whether the SIS's fraud count (IV) states a claim upon which relief can be granted.  SIS alleges that Defendants (by way of their agent Stephanie Dello Russo) misrepresented their financial position to fraudulently induce SIS into providing media services at a steeply discounted rate.  To make out a claim for common-law fraud in New Jersey, "a plaintiff must demonstrate that (1) defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending

---

[4] The Court also notes that Plaintiff has attached a copy of the alleged agreement to its brief opposing Defendants' motion.

the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission to its detriment." Zorba Contractors, Inc. v. Housing Authority, City of Newark, 362 N.J. Super. 124, 139 (App. Div. 2003).  A claim of fraud also triggers Federal Rule of Civil Procedure 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Id.  Rule 9(b)'s heightened pleadings standard "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997). "Even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice." C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Secs. Litig.), 311 F.3d 198, 217 (3d Cir. 2002).  Legal theories must be accompanied by factual allegations that make a "theoretically viable claim plausible." Id.  Thus, although "[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally," a plaintiff is still required to provide factual allegations that support his legal theory. Id.  This means that, at a minimum, the Plaintiff must plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' -- that is, the 'who, what, when, where and how' of the events at issue." C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Sec. Litig.), 311 F.3d 198, 217 (3d Cir. 2002) (quoting In re Burlington, 114 F.3d at 1422); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  As currently pled, the Complaint falls short of Rule 9(b)'s heightened pleading standard. Most glaringly, the Complaint does not allege facts showing that Stephanie Dello Russo knowingly misrepresented the financial state of the companies.  The Complaint alleges broadly

that Stephanie Dello Russo fraudulently induced Plaintiff into providing its services at a discounted rate by falsely claiming that the Defendant companies had been operating at a loss. But the Complaint does not state what Stephanie Dello Russo said about the companies' prior operating losses and contains no facts to support the allegation that the companies were, in fact, profitable at the time of the alleged misstatement  "[T]he court cannot accept such serious allegations of fraud based solely on the 'information and belief' of the plaintiff alone, without any elaboration as to the basis of that belief."  Shulton, Inc. v. Optel Corp., No. 85-2925, 1986 WL 15617 (D.N.J. Sept. 29, 1986) (citing 2 Moore's Federal Practice, ¶ 9.03).  Accordingly, the fraud claim must be dismissed.

Finally, the Court turns to Defendants' motion to enjoin SIS and the Third-Party Defendants from disseminating the Defendants' confidential information.  "A preliminary injunction is an 'extraordinary and drastic remedy.'"  Munaf v. Geren, 553 U.S. 674, 689 (2008) (quoting C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008).  Defendants' motion for a preliminary injunction will be denied in its entirety on the grounds that there has been no showing of immediate irreparable injury.

In order to satisfy the "irreparable injury" prong of the preliminary injunction standard, "[a] plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'  The 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it

6

'must be of a peculiar nature, so that compensation in money cannot atone for it.'" ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (internal quotations and citations omitted). Defendants repeatedly assert that SIS and the Third-Party Defendants have threatened to release confidential patient leads. For example, James Dello Russo states that Bill Scholar "sent several e-mails and texts to me, threatening that Karl Stearns had possession of the Corporate Defendant's server, which contained all of their trade secrets and that he would sell them to the Dello Russo's competitors." (James Dello Russo Decl. ¶ 6) But Defendants fail to directly quote this supposed threat, and while the excerpted communications that are provided could be construed as threats to reveal confidential information, the Court is not compelled to such a conclusion. In general, Defendants overstate the unmistakable character of the supposed threats. James Dello Russo's declaration also alleges only vaguely that "[w]e learned from other people that Scholar was using to place radio ads that Bill Scholar and Karl Stearns had approached other Lasik practices with an offer to give them the confidential patient leads that belonged to the Dello Russos." (Id. at ¶ 16) The conspicuous absence of detail renders this assertion impotent. Defendants also rely heavily on the declaration of Jennifer Medina, a current employee of the New Jersey Eye Center, P.A., which describes a conversation Medina had on February 25, 2013, with a representative of a competitor, Park Avenue Lasik, named "Liz." Medina asserts that "we had heard from other sources that Scholar was attempting to sell out [sic] patient leads to our competitors," but again does not make clear how New Jersey Eye Center heard that in the first instance. Medina also states that when she asked Liz if Scholar had given those leads to Park Avenue Lasik, "she refused to answer." (Medina Decl. ¶ 3) Medina's declaration amounts to unattributed hearsay and a non-statement indicating nothing whatever – thin grounds upon which

to rest a motion for injunctive relief.  In short, even assuming that disclosure of Defendants' patient leads would theoretically result in irreparable injury, Defendants have failed to establish any likelihood that the feared misconduct has occurred or will occur in the future.  Therefore, the Court concludes that the extraordinary remedy of a preliminary injunction is unwarranted.

An appropriate order accompanies this opinion.

  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: June 5, 2013